UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1  RAFAEL M. BERNABE-CABALLERO
    also known as "Marco" and "Marcos",
D-2  MICHAEL PORRU,

    Defendants.

_____/

Case: 2:08-cr-20658
Judge: Hood, Denise Page
MJ: Majzoub, Mona K
Filed: 12-11-2008 At 03:59 PM
INDI USA V SEALED MATTER (EB)

VIOLATIONS:  18 U.S.C. § 2
    18 U.S.C. § 371
    18 U.S.C. § 1591
    18 U.S.C. § 2422(a)
    8 U.S.C. § 1328

## INDICTMENT

THE GRAND JURY CHARGES:

### GENERAL ALLEGATIONS

At times pertinent to this Indictment:

1. Beginning in approximately March 2007 and continuing through November 2008, defendant RAFAEL M. BERNABE-CABALLERO operated a prostitution business under the guise of an escort service known as "Miami Ultimate" based in the Miami, Florida area, in which he controlled and marketed women to perform prostitution – that is, sexual acts with customers (hereinafter "johns") in exchange for money – in various cities, including the Washington, D.C. area; the Detroit, Michigan area; the Minneapolis, Minnesota area; the Chicago, Illinois area; and the Cleveland, Ohio area.

2. Defendant RAFAEL M. BERNABE-CABALLERO operated Miami Ultimate through Mu Consulting, Inc., a corporate entity incorporated in the State of Florida and

controlled by defendant RAFAEL M. BERNABE-CABALLERO.

3. Defendant RAFAEL M. BERNABE-CABALLERO acted as a "pimp" in operating his prostitution business, that is, defendant RAFAEL M. BERNABE-CABALLERO recruited, directed, managed, oversaw, disciplined, controlled, and paid women to work as prostitutes, and received payment from johns for prostitution services provided by the women.

4. Defendant RAFAEL M. BERNABE-CABALLERO operated Miami Ultimate by use of facilities of interstate commerce, including an Internet web site ("www.miamiultimate.com"), electronic mail, and cellular telephones.

5. Defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by other persons, and conspiring with other persons, used the Miami Ultimate website, to recruit women, to market women for prostitution by posting photographs of and biographical information about the women, to solicit johns, and to inform johns when women would be visiting a particular city.

6. Defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by other persons, and conspiring with other persons, used the Internet, electronic mail, and cellular phones to, among other things, make travel and lodging arrangements for women to visit cities for the purpose of prostitution; communicate with women working as prostitutes; communicate with johns to arrange appointments with women for the purpose of engaging in sexual acts in exchange for money; and solicit and receive "reviews" by johns of the physical appearance and sexual performance of the women.

7. Defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by other persons, placed advertisements in local and international newspapers and other periodicals recruiting women to work for Miami Ultimate, ostensibly as escorts and models, and placed

advertisements soliciting johns for sexual encounters with the women on Internet websites.

8. Defendant RAFAEL M. BERNABE-CABALLERO, identifying himself as "Marco" or "Marcos", told some women who responded to the advertisements, including Victim 1 and Victim 3, that they would work as escorts accompanying wealthy men to events such as parties and dinners. Defendant RAFAEL M. BERNABE-CABALLERO also obtained information from women, including Victim 1 and Victim 3, about their families and immigration status in the United States.

9. Defendant RAFAEL M. BERNABE-CABALLERO did not tell some women during those initial conversations, including Victim 1 and Victim 3, that they would be required to perform sexual acts in exchange for money.

10. Once women agreed to work as escorts, defendant RAFAEL M. BERNABE-CABALLERO sent them to a photographer in the Miami, Florida area, who took photographs of the women wearing revealing clothing, and in some cases, topless photographs. The photographer then sent the photographs, frequently by electronic mail, to defendant RAFAEL M. BERNABE-CABALLERO.

11. In some cases, the photographer also obtained from women copies of their identification, such as a driver's license, state identification card, or passport, which the photographer then provided to defendant RAFAEL M. BERNABE-CABALLERO.

12. Defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by other persons, and conspiring with other persons, posted photographs of women taken by the photographer on the Miami Ultimate website, typically with an assumed name and often with the woman's face obscured, in order to protect the prostitute's identity initially.

13. Defendant RAFAEL M. BERNABE-CABALLERO sent newly-recruited women to their first "job", typically in the Washington, D.C. and Tysons Corner, Virginia areas, often under the pretense that they would be performing escort services.

14. Defendant RAFAEL M. BERNABE-CABALLERO made and paid for the travel arrangements for the women, including airfare and hotel accommodations.

15. When the women arrived at the hotel, defendant RAFAEL M. BERNABE-CABALLERO informed them by telephone that their first client was on his way. It was typically at this point that some of the women would learn for the first time, from defendant RAFAEL M. BERNABE-CABALLERO, that they were required to perform sexual acts with the clients in exchange for money.

16. If women refused or resisted, defendant RAFAEL M. BERNABE- CABALLERO made various threats to coerce their compliance, such as: he would cause the women or their families to be harmed or killed; he would report the women to immigration officials (if they were not citizens of the United States); he would report the women to police and allege that they were already committing prostitution; he would expose their face and true name on the Miami Ultimate website; and he would inform their families that they were prostitutes.

17. Hearing the adverse consequences threatened by Defendant RAFAEL M. BERNABE- CABALLERO, and in fear of those threats, women, including Victim 1 and Victim 3, proceeded to engage in sexual acts with johns sent to their hotel rooms by defendant RAFAEL M. BERNABE-CABALLERO in exchange for money paid by the johns.

18. Defendant RAFAEL M. BERNABE-CABALLERO generally required the women to work for five (5) to ten (10) days straight, and required the women to move to a new

hotel every few days.

19. Defendant RAFAEL M. BERNABE-CABALLERO typically sent multiple johns to each woman every day, in some instances over ten (10) johns per day.

20. Each of the johns paid the women in cash for sexual acts.

21. Defendant RAFAEL M. BERNABE-CABALLERO permitted the women to keep sixty (60) percent of the payment from the johns, minus some portion of the cost of travel and lodging, and required them to send him forty (40) percent of the amount paid by the johns.

22. Defendant RAFAEL M. BERNABE-CABALLERO required the women to either deposit his portion of the money paid by johns in a designated bank account or to wire money to him via Western Union, typically the morning following their appointments.

23. Defendant RAFAEL M. BERNABE-CABALLERO required the women to travel from the Miami, Florida area to additional cities, such as the Detroit, Michigan area; the Minneapolis, Minnesota area, the Chicago, Illinois area, and the Cleveland, Ohio area, and perform sexual acts in exchange for money.

24. In each city, defendant RAFAEL M. BERNABE-CABALLERO required the women to deposit the money received from johns into a designated Bank of America account or to wire him money via Western Union.

25. Western Union money transfers were sent from cities in the Eastern District of Michigan by women working as prostitutes for defendant RAFAEL M. BERNABE-CABALLERO and Miami Ultimate as follows:

| Date | City | Amount |
|------|------|--------|
| 12/8/07 | Southfield | $900.00 |
| 12/9/07 | Southfield | $900.00 |
| 3/20/08 | Southfield | $920.00 |
| 11/11/08 | Southfield | $1800.00 |

Each of the money transfers was directed to defendant RAFAEL M. BERNABE-CABALLERO, or to a person assisting defendant RAFAEL M. BERNABE-CABALLERO, in Miami Beach, Florida. Additional money transfers were sent by women from cities in the Eastern District of Michigan to defendant RAFAEL M. BERNABE-CABALLERO as follows:

| Date | City | Amount |
|------|------|--------|
| 3/31/07 | Ferndale | $1224.00 |
| 3/31/07 | Southfield | $850.00 |
| 3/28/08 | Detroit | $691.01 |
| 3/29/08 | Brighton | $691.01 |
| 4/10/08 | Brighton | $585.00 |
| 4/29/08 | Southfield | $365.00 |
| 4/30/08 | Southfield | $504.00 |
| 5/1/08 | Brighton | $225.00 |

### *Victim 1*

26. Victim 1 is an adult woman who is not a citizen of the United States of America.

27. Between approximately September 2007 and approximately June 2008, defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by others, enticed, coerced, and forced Victim 1 to engage in prostitution under the circumstances, or similar circumstances, described in paragraphs 1 through 24 above, including threatening to kill Victim 1 and her family if she refused to comply.

28. In approximately October 2007, defendant RAFAEL M. BERNABE-CABALLERO enticed and coerced Victim 1 to travel from outside the United States of America into the United States of America for the purpose of engaging in prostitution in the United States of America, including in the Detroit, Michigan area. Defendant RAFAEL M. BERNABE-CABALLERO also paid for a portion of the cost of Victim 1's travel to the United States of America.

29. In March 2008, Victim 1 traveled from the Miami, Florida area to the Detroit, Michigan area at the direction of defendant RAFAEL M. BERNABE-CABALLERO for the purposes of prostitution. In March 2008, Victim 1 stayed at a hotel in Southfield, Michigan and performed sex acts with johns in exchange for money and thereafter sent money paid by johns to defendant RAFAEL M. BERNABE-CABALLERO via Western Union.

### *Victim 3*

30. Victim 3 is an adult woman who is not a citizen of the United States of America.

31. Between approximately September 2007 and June 2008, defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by others, enticed, coerced, and forced Victim 3 to

engage in prostitution under the circumstances, or similar circumstances, described in paragraphs 1 through 24 above, including by use of threats that he would cause physical harm to Victim 3 and her family, report Victim 3 to police and immigration authorities, and inform Victim 3's family that she was a prostitute.

### *Defendant 2: Michael Porru*

32. Defendant MICHAEL PORRU is a john who, beginning on or before June 2007 and continuing through approximately October 2008, on numerous occasions paid for sex acts with women employed by defendant RAFAEL M. BERNABE-CABALLERO and Miami Ultimate, typically when the women were sent to the Tysons Corner, Virginia area.

33. Defendant MICHAEL PORRU also posted "reviews" of the appearance and sexual performance of women employed by defendant RAFAEL M. BERNABE-CABALLERO and Miami Ultimate on websites such as The Erotic Review in exchange for a discounted rate from defendant RAFAEL M. BERNABE-CABALLERO for prostitution services by Miami Ultimate women.

34. In some instances, and at the request of defendant RAFAEL M. BERNABE-CABALLERO, defendant MICHAEL PORRU posted positive reviews of women he had not seen, in advance of their "tour" to the area of Washington, D.C. and Tysons Corner, Virginia, in order to assist RAFAEL M. BERNABE-CABALLERO and Miami Ultimate in increasing the number of appointments with other johns.

35. In approximately December 2007, defendant MICHAEL PORRU assisted with the purchase of a laptop computer for use in conducting the business of Miami Ultimate.

36. In February 2008, defendant MICHAEL PORRU alerted defendant RAFAEL M.

BERNABE-CABALLERO to a "negative" review of a Miami Ultimate woman that had been posted on the internet by another john and that mentioned rumors that Miami Ultimate rewarded positive reviews with discounts. Defendant MICHAEL PORRU recommended that defendant RAFAEL M. BERNABE-CABALLERO "blacklist" the john who had posted the review.

37. In July 2008, defendant RAFAEL M. BERNABE-CABALLERO and defendant MICHAEL PORRU exchanged electronic mail discussing a joint prostitution venture, the benefits and expenses of which they would share equally, and in which MICHAEL PORRU would act as manager in return for a salary while RAFAEL M. BERNABE-CABALLERO would participate by sharing his knowledge, contacts with women, and client list.

### *The Assistance of Other Johns*

38. Another john, hereinafter "John 2," assisted defendant RAFAEL M. BERNABE-CABALLERO in generating interest in Miami Ultimate women by posting positive reviews on the Internet in exchange for discounts. As with MICHAEL PORRU, defendant RAFAEL M. BERNABE-CABALLERO requested that John 2 write and post reviews on The Erotic Review website, prior to John 2 actually meeting the prostitute. John 2 met with prostitutes from Miami Ultimate, and paid to have sexual relations with them, in the Tyson's Corner, Virginia area, beginning in approximately November 2007 and continuing through approximately October 2008.

39. Another john, hereinafter "John 3," assisted defendant RAFAEL M. BERNABE-CABALLERO in generating interest in Miami Ultimate women by posting positive reviews on the Internet in exchange for discounts. As with MICHAEL PORRU, defendant RAFAEL M. BERNABE-CABALLERO requested that John 3 write and post reviews on The Erotic Review

website, prior to John 3 actually meeting the prostitute. John 3 met with prostitutes from Miami Ultimate, and paid to have sexual relations with them, in the Tyson's Corner, Virginia area, beginning in approximately May 2007 and continuing through approximately September 2008.

40. Another john, hereinafter "John 4," also assisted defendant RAFAEL M. BERNABE-CABALLERO by posting positive reviews on the internet in exchange for discounts. As with MICHAEL PORRU, defendant RAFAEL M. BERNABE-CABALLERO requested that John 4 write and post reviews on The Erotic Review website, prior to the John 4 actually meeting the prostitute. John 4 met with prostitutes from Miami Ultimate, and paid to have sexual relations with them, in the Tyson's Corner, Virginia area, beginning in approximately July 2007 and continuing through approximately September 2008.

41. Defendant RAFAEL M. BERNABE-CABALLERO employs a woman who, from approximately August 2008 through approximately October 2008, worked for defendant RAFAEL M. BERNABE-CABALLERO and Miami Ultimate by, among other things, answering phones, scheduling appointments with johns, making travel and lodging arrangements for prostitutes, paying cellular telephone bills to ensure continued service, and providing defendant RAFAEL M. BERNABE-CABALLERO with reports about the daily number of appointments and gross receipts for women working as prostitutes.

42. Beginning on or before May 2007 through approximately October 2008, the Miami Ultimate website was administered by ABC Web Service, and its employees, in exchange for payment for services by defendant RAFAEL M. BERNABE-CABALLERO or Miami Ultimate.

43. Some of the employees of ABC Web Service knew that Miami Ultimate was a

prostitution business, and these employees assisted defendant RAFAEL M. BERNABE-CABALLERO and Miami Ultimate in the operation of the prostitution business by, among other activities, posting photographs and biographical information of the women on the website, including some topless photographs, updating the "tour" calendar showing when women would be in a particular city, and concealing or revealing the true name and face of women at the direction of defendant RAFAEL M. BERNABE-CABALLERO.

## COUNT ONE

*(Sex Trafficking by Force, Fraud, or Coercion; Aiding and Abetting -- 18 U.S.C. §§ 1591 and 2)*

D-1   RAFAEL M. BERNABE-CABALLERO

44.   Paragraphs 1 through 43 are incorporated in this Count by reference as though fully set forth herein.

45.   Beginning on or about August 2007 and continuing through approximately June 2008, in the Eastern District of Michigan and elsewhere, defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by others, knowingly, in and affecting interstate commerce, did recruit, entice, transport, provide, and obtain by any means, Victim 1, an adult female, and defendant RAFAEL M. BERNABE-CABALLERO did benefit, financially and by receiving a thing of value, from participation in a venture which engaged in such recruiting, enticing, transporting, providing, and obtaining Victim 1 knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Sections 1591(2)(c)(A) and (B), would be used to cause Victim 1 to engage in commercial sex acts, all in violation of Title 18, United States Code, Sections 1591 and 2.

## COUNT TWO

*(Sex Trafficking by Force, Fraud, or Coercion; Aiding and Abetting* -- 18 U.S.C. §§ 1591 and 2)

D-1    RAFAEL M. BERNABE-CABALLERO

46.    Paragraphs 1 through 43 are incorporated in this Count by reference as though fully set forth herein.

47.    Beginning on or about August 2007 and continuing through approximately June 2008, in the Southern District of Florida and elsewhere, defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by others, knowingly, in and affecting interstate commerce, did recruit, entice, transport, provide, and obtain by any means, Victim 3, an adult female, and defendant RAFAEL M. BERNABE-CABALLERO did benefit, financially and by receiving a thing of value, from participation in a venture which engaged in such recruiting, enticing, transporting, providing, and obtaining Victim 3 knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Sections 1591(2)(c)(A) and (B), would be used to cause Victim 1 to engage in commercial sex acts, all in violation of Title 18, United States Code, Sections 1591 and 2.

## COUNT THREE

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
*18 U.S.C. § 2422(a) and 2)*

D-1  RAFAEL M. BERNABE-CABALLERO

48.  Paragraphs 1 through 43 are incorporated in this Count by reference as though fully set forth herein.

49.  Beginning on or about August 2007 and continuing through approximately June 2008, in the Eastern District of Michigan and elsewhere, defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by others, attempted to and did knowingly persuade, induce, entice, or coerce an individual, namely Victim 1, to travel in interstate commerce to engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense, all in violation of Title 18, United States Code, Sections 2422(a) and 2.

## COUNT FOUR

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
*18 U.S.C. § 2422(a) and 2)*

D-1  RAFAEL M. BERNABE-CABALLERO

50.  Paragraphs 1 through 43 are incorporated in this Count by reference as though fully set forth herein.

51.  Beginning on or about August 2007 and continuing through approximately June 2008, in the Southern District of Florida and elsewhere, defendant RAFAEL M. BERNABE-CABALLERO, aided and abetted by others, attempted to and did knowingly persuade, induce, entice, or coerce an individual, namely Victim 3, to travel in interstate commerce to engage in prostitution or in any sexual activity for which any person can be charged with a criminal

offense, all in violation of Title 18, United States Code, Sections 2422(a) and 2.

## COUNT FIVE

*(Importation of an Alien for an Immoral Purpose – 8 U.S.C. § 1328)*

D-1   RAFAEL M. BERNABE-CABALLERO

52.   Paragraphs 1 through 43 are incorporated in this Count by reference as though fully set forth herein.

53.   In or about October 2007 and continuing through approximately June 2008, in the Eastern District of Michigan and elsewhere, defendant RAFAEL M. BERNABE-CABALLERO, did knowingly import into the United States an alien, namely Victim 1, for the purpose of prostitution and did knowingly keep, maintain, control, support, employ, and harbor Victim 1 in pursuance of the importation of Victim 1 into the United States for the purpose of prostitution, all in violation of Title 8, United States Code, Section 1328.

## COUNT SIX

*(Conspiracy – 18 U.S.C. § 371)*

D-1   RAFAEL M. BERNABE-CABALLERO
D-2   MICHAEL PORRU

54.   Paragraphs 1 through 43, 49, and 51 are incorporated in this Count by reference as though fully set forth herein.

55.   From approximately March 2007 and continuing through approximately November 2008, defendants RAFAEL M. BERNABE-CABALLERO and MICHAEL PORRU, in the Eastern District of Michigan and elsewhere, did knowingly, unlawfully, and willfully conspire, confederate, and agree together and with other persons known and unknown to the

Grand Jury, to commit the following offense against the United States: coercion and enticement of a person, specifically: Victim 1, Victim 3, and other women, to travel in interstate and foreign commerce to engage in prostitution and other sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(a).

## OVERT ACTS

56. In furtherance of the conspiracy, and to effect its objects, the defendants and their co-conspirators committed the acts described in paragraphs 1 through 43, 49, and 51 of this Indictment, among others, in the Eastern District of Michigan and elsewhere.

## COUNT SEVEN

(*Forfeiture*- 18 U.S.C. §§ 1594, 2428, and 981(a)(1)(C) as applied by 28 U.S.C. § 2461(c))

D-1   RAFAEL M. BERNABE-CABALLERO

57. Upon conviction of the offense alleged in Count 1 and/or Count 2 of this indictment, the defendant, RAFAEL M. BERNABE-CABALLERO, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 1594 the following:

> A. Any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violations; and
>
> B. Any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of such violation.

58. Upon conviction of the offense alleged in Count 3 and/or Count 4 of this indictment, the defendant, RAFAEAL M. BERNABE-CABALLERO, shall forfeit to the United States pursuant to 18 U.S.C. § 2428 the following:

> A. Any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violation; and

      B.    Any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of such violation.

59.    Upon conviction of the offense alleged in Count 5 of this indictment, the defendant, RAFAEL M. BERNABE-CABALLERO, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and as applied by 28 U.S.C. § 2461(c), any property, real and personal, which constitutes or is derived from proceeds traceable to a violation of ... any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of title 18), or a conspiracy to commit such offense, including 18 U.S.C. § 1956(c)(7)(B)(vii).

60.    If any of the property described in paragraphs 57 through 59 hereof as being subject to forfeiture pursuant to Title 18, United States Code, Sections 1594, 2428, and 981(a)(1)(C), as a result of any act or omission of the defendant –

      A.    cannot be located upon the exercise of due diligence;

      B.    has been transferred to, sold to, or deposited with a third party;

      C.    has been placed beyond the jurisdiction of this Court;

      D.    has been substantially diminished in value; or

      E.    has been commingled with other property which cannot be divided without difficulty;

the United States, pursuant to Title 18, United States Code, Sections 1594, 2428, and 981(a)(1)(C), as applied by Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), intends to seek forfeiture of all other property of the defendant up to the value of the property subject to forfeiture described in paragraphs 57 through 59.

All pursuant to Title 18, United States Code, Sections 1594, 2428, and 981(a)(1)(C) as applied by Title 28, United States Code, Section 2461(c).

## COUNT EIGHT

*(Forfeiture-* 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 1956(c)(7))

D-1 RAFAEL M. BERNABE-CABALLERO
D-2 MICHAEL PORRU

61. Upon the conviction of the offense alleged in Count 6 of this indictment, the defendants, RAFAEL M. BERNABE-CABALLERO and MICHAEL PORRU, jointly and severally, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and as applied by 28 U.S.C. § 2461(c) any property, real and personal, which constitutes or is derived from proceeds traceable to a violation of ... any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of title 18), or a conspiracy to commit such offense, including violations of law enumerated at 18 U.S.C. § 1961(1), including 18 U.S.C. §2422(a).

62. If any of the property described in paragraph 61 hereof as being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), as a result of any act or omission of the defendants –

    A. cannot be located upon the exercise of due diligence;

    B. has been transferred to, sold to, or deposited with a third party;

    C. has been placed beyond the jurisdiction of this Court;

    D. has been substantially diminished in value; or

    E. has been commingled with other property which cannot be divided

without difficulty;

the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as applied by Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), intends to seek forfeiture of all other property of the defendants, jointly and severally, up to the value of the property subject to forfeiture described in paragraph 61.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) as applied by Title 28, United States Code, Section 2461(c).

THIS IS A TRUE BILL

s/Grand Jury Foreperson
FOREPERSON

TERRENCE BERG
Acting United States Attorney


s/Jennifer M. Gorland
JENNIFER M. GORLAND
Assistant United States Attorney
Chief, General Crimes Unit


s/Mark Chasteen
MARK CHASTEEN
JENNIFER BLACKWELL
PHILIP A. ROSS
Assistant United States Attorneys


Dated: December 11, 2008

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |
|---|---|---|
| NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to c | | Case: 2:08-cr-20658<br>Judge: Hood, Denise Page<br>MJ: Majzoub, Mona K<br>Filed: 12-11-2008 At 03:59 PM<br>INDI USA V SEALED MATTER (EB) |

| Companion Case Information | |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: MC |

**Case Title:** USA v.  D-1 RAFAEL M. BERNABE-CABALLERO, also known as "Marco" and "Marcos", D-2 MICHAEL PORRU,

**County where offense occurred :** Oakland

**Check One:**     X Felony          ☐ Misdemeanor          ☐ Petty

 ____Indictment/____Information --- no prior complaint.
 _X_ Indictment/____Information --- based upon prior complaint [Case number: 08-MJ-30463 ]
 ____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information:

**Superseding to Case No:** _____     **Judge:** _____

☐    Original case was terminated; no additional charges or defendants.
☐    Corrects errors; no additional charges or defendants.
☐    Involves, for plea purposes, different charges or adds counts.
☐    Embraces same subject matter but adds the additional defendants or charges below:

**Defendant name**                    **Charges**

---

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

12/11/08
Date

MARK CHASTEEN
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, Michigan 48226-3220
Phone: (313) 226-9555
Fax: (313) 226-2621
Email: mchasteen@usa.doj.gov

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/20/04